UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CLAUDIO, CDCR #AU-1732,<br><br>                       Plaintiff,<br>vs.<br><br>PIA INDUSTRIES, INC.; CDCR; BEIRBAUM; HOGAN; OJEDA; FLORES; EKWOST; HILL; PALMER; DOES 1–50,<br><br>                       Defendants. | Case No.: 3:23-cv-01965-JAH-VET<br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)(ii) AND 28 U.S.C. § 1915A(b)(1)**<br><br>[ECF No. 2] |

## I.     BACKGROUND

Plaintiff Robert Claudio ("Plaintiff" or "Claudio"), proceeding pro se while incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, has filed a civil rights complaint pursuant to 42 U.S.C. §§ 1983 and 1985.  (*See* "Compl.," ECF No. 1 at 6.)  Claudio alleges the California Department of Corrections and Rehabilitation ("CDCR"), the Prison Industry Authority ("PIA Industries"), two RJD Wardens, several PIA employees, and dozens of unidentified Does discriminated against and conspired to

remove him from job assignment based on his gender identity.[1]  (*Id.* at 6–8.)  Claudio requests leave to proceed *in forma pauperis* ("IFP").  (*See* ECF No. 2.)

For the following reasons, the Court grants Claudio's Motion to Proceed IFP, but dismisses his Complaint *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) because it fails to state a plausible claim for relief against any named Defendant.

## II.   PLAINTIFF'S IFP MOTION

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee.[2]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the Plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' … the PLRA [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners:  under the current version of the IFP statute, 'if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.'"  *Hymas*, 73 F.4th at 767

---

[1] Claudio identifies as an LGBTQ candidate and refers to himself using male pronouns. *See* Compl. at 7.

[2] In addition to the $350 statutory fee, civil litigants filing suit before December 1, 2023 were required to pay an additional administrative fee of $52.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020).  The administrative portion of the fee increased to $55 on December 1, 2023; however, the administrative portion of the fee does not apply to persons granted leave to proceed IFP.  *See* https://www.casd.uscourts.gov/_assets/pdf/attorney/CASD%20FEE%20SCHEDULE.pdf (last visited Jan. 25, 2024).

(quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)-(2)).

To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[,]" as well as "a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for … the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Using this financial information, the court "shall assess and when funds exist, collect, … an initial partial filing fee," which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)). Thus, while prisoners may qualify to proceed IFP without having to pay the statutory filing fee in one lump sum, they nevertheless remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Here, Claudio's IFP application complies with both 28 U.S.C. § 1915(a)(1) and (2). In support of his Motion, he has submitted a copy of his CDCR Inmate Trust Account Statement Report, together with a certificate issued by an RJD Accounting Officer. (*See* ECF Nos. 2, 3 at 1–4); *see also* S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show Claudio maintained an average monthly balance of $362.60 in his prison trust account, and had $194.69 in average monthly deposits credited to his account over the 6-month period immediately preceding the filing of his Complaint. At the time of filing, however, Claudio's available balance was only $1.35. (*See* ECF No. 3 at 1, 3.)

Based on this accounting, the Court **GRANTS** Claudio's Motion to Proceed IFP (ECF No. 2) and assesses an initial partial filing fee of $65.60 pursuant to 28 U.S.C. § 1915(b)(1). However, this initial fee need be collected only if sufficient funds are

available in Claudio's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). The CDCR must thereafter collect the full balance of the $350 total fee owed in this case and forward payments to the Clerk of the Court as provided by 28 U.S.C. § 1915(b)(2).

### III. SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)

#### A. Standard of Review

Because Claudio is a prisoner proceeding IFP, his Complaint is subject to a preliminary screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). These statutes require the Court to *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (Section 1915A screening "incorporates the familiar standard applied in the contest of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."). Federal Rules of Civil Procedure 8 and 12(b)(6) together require a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but

"[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.* "The "mere possibility of misconduct" or unadorned, "the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.* at 678–79. Still, the court has "an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022) (citation omitted).

"To recover damages under 42 U.S.C. § 1983, a plaintiff must prove that the defendant deprived him of a 'constitutional right while acting under color of state law.'" *Herrera v. Los Angeles Unified Sch. Dist.*, 18 F.4th 1156, 1158 (9th Cir. 2021) (quoting *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006)).

### B. Plaintiff's Factual Allegations

During the months of February and March 2023, Claudio alleges CDCR, PIA Industries, Inc., RJD Warden Hill, Associate Warden Palmer, and PIA employees Bierbaum, Hogan, Ojeda, Flores and Ekwost all conspired to discriminate against him based on his gender identity.[3] (*See* Compl. at 1, 6.) Specifically, Claudio claims to identify as a member of the LGBTQ community, and to have been employed for two years as an inmate floor worker with PIA Industries, which contracts with the CDCR to manufacture shoes at RJD. (*Id.* at 6–7.) Claudio alleges when he recently applied and

---

[3] Claudio also refers to unidentified Does 1–50, but he includes no factual allegations whatsoever as to who those persons may be or what they may or may not have done. "A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular doe defendant violated his rights." *Cuda v. Employees/Contractors/Agents at or OCCC*, 2019 WL 2062945, at *3–4 (D. Haw. May 9, 2019); *see also Keavney v. County of San Diego*, No. 3:19-cv-01947-AJB-BGS, 2020 WL 4192286, at *4–5 (S.D. Cal. 2020) (noting that while Doe pleading is neither authorized nor specifically barred by the Federal Rules, "a complaint using fictitious names for unidentified defendants still requires 'specific facts showing how each particular Doe Defendant violated his rights.'").

was promoted to hold one of four inmate clerk positions, "all PIA employees" were aware he was an LGBTQ candidate. (*Id.* at 7.) All four clerks were assigned to share a community desk located near the center of the plant. (*Id.*)

Sometime in February 2023, Claudio alleges "PIA senior staff were overheard by inmates [stating] they wanted to "Get rid of the faggot" who worked for them. (*Id.*) Claudio alleges these staff members indicated they had no objection to him working in another part of the plant, but did not want him to work as "their clerk." (*Id.*) Claudio further alleges these "prejudicial defendants" held a meeting during which they "schemed, conspired, [and] made plans to set [him] up and fire him because he was an LGBTQ class member." (*Id.*)

Specifically, Claudio contends that on or about March 1, 2023, Defendants "arranged [and] coordinated to plant PIA exams in[] the community shared desk." (*Id.*) On March 2, 2023, Defendant Bierbaum conducted a "fictional search," found the exams in one of the drawers, and "blam[ed] [Claudio] for stealing [them]." (*Id.* at 8.) Claudio was issued a "serious RVR (Rules Violation Report)" accusing him of theft on March 3, 2023. (*Id.*) He alleges photos of the exams were used to support his disciplinary conviction, but camera footage which would have verified the true culprit was ignored. (*Id.*) As a result, Claudio was fired from his job. (*Id.* at 9.)

Claudio claims all Defendants unlawfully conspired and discriminated against him in violation of the Fourteenth Amendment based on his gender identity and LGBTQ class membership. (*Id.* at 3, 6, 9.) He seeks injunctive relief preventing future acts of retaliation, $65,000 in compensatory damages from each individually named Defendant, and $1.5 million in punitive damages. (*Id.* at 5.)

**C.    Discussion**

    **1.    Eleventh Amendment – Defendants CDCR & PIA Industries**

The Court first finds that to the extent Claudio seeks to hold either the CDCR or PIA Industries liable under section 1983, his claims are barred by the Eleventh Amendment. "The Eleventh Amendment bars suits for money damages in federal court

against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court." *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

Here, Claudio includes both the CDCR and PIA Industries as Defendants but because both are arms or sub-agencies of the State of California, both are immune. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (holding that Eleventh Amendment immunity extends to state agencies); *Hale v. Arizona*, 993 F.2d 1387, 1398–99 (9th Cir. 1993) (holding that a state department of corrections is an arm of the state, and thus, not a "person" within the meaning of § 1983); *see also Dragasits v. California*, No. 3:16-cv-01998-BEN-JLB, 2016 WL 680947, at *3 (S.D. Cal. Nov. 15, 2016) ("The State of California's Department of Corrections and Rehabilitation and any state prison, correctional agency, sub-division, or department under its jurisdiction, are not 'persons' subject to suit under § 1983). The PIA is also a sub-agency within the CDCR that among other things, operates work programs for prisoners. *See* Cal. Penal Code §§ 2800–2801; *Burleson v. California*, 83 F.3d 311, 312–13 (9th Cir. 1996) (describing origins of PIA); *Jefferson v. Hollingsworth*, No. 3:17-CV-1099-BEN-BGS,

2017 WL 3396516, at *3 (S.D. Cal. Aug. 4, 2017).  The PIA is by statute a part of the CDCR.  *Burleson*, 83 F.3d at 312–13 (citing Cal. Penal Code § 2800).  The PIA's status as a part of the California correctional system brings it within the ambit of "prison-structured programs." *Id.* at 314.

For these reasons, Claudio's suit may not proceed against either the CDCR or PIA Industries.  *See e.g, Palacios v. Lewis,* No. 23-CV-871 TWR (DEB), 2023 WL 8628909, at *2 (S.D. Cal. Dec. 13, 2023) (dismissing pro se prisoner's claims as barred by the Eleventh Amendment pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) and 1915A(b)(ii); *Hansen v. CAL/PIA*, No. 1:09-CV-01651, 2010 WL 4723079, at *4 (E.D. Cal. Nov. 15, 2010) (dismissing prisoner's claims against PIA Industries *sua sponte* as barred by the Eleventh Amendment pursuant to 28 U.S.C. § 1915A).

### 2. *Respondeat Superior* – Wardens Hill & Palmer

The Court also finds Claudio's Complaint fails to state any plausible claim for relief against either RJD Warden Hill or Associate Warden Palmer.  There is no *respondeat superior* liability under § 1983.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Specifically, liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates.  *Iqbal*, 556 U.S. at 676–77.  "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them.").

As to Warden Hill, Claudio merely concludes he "is responsible for all actions conducted on institutional grounds" or that "occur on his facility."  (*See* Compl. at 6, 9.) With respect to Associate Warden Palmer, whom Claudio includes only in the caption and in a paragraph heading listing all Defendants, Claudio makes no factual allegations whatsoever.  (*See id.* at 1, 6.)  Nowhere in the body of his pleading does Claudio set forth

any specific facts to plausibly suggest either Hill or Palmer participated in any conspiracy or directed any act of discrimination against him. *See Taylor*, 880 F.3d at 1045. Instead, it appears Claudio includes these parties based only on the positions they hold at RJD and not on anything that either of them did or failed to do. "Because vicarious liability is inapplicable to . . . § 1983 suits, [Claudio] must plead that each Governmental-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. He has not. Therefore, Claudio fails to state a plausible claim for relief against either Defendants Hill or Palmer. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *see also Lopez*, 203 F.3d at 1126–27.

### 3. Group Pleading / Remaining PIA Employees

The Court further finds that to the extent Claudio seeks to hold the remaining named Defendants—Bierbaum, Hogan, Ojeda, Flores, and Ekwost—liable for conspiring to discriminate against him based on his gender identity in violation of the Fourteenth Amendment, (*see* Compl. at 3, 6), he fails to allege facts sufficient to describe what each of them did to cause him injury. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012) (noting that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.") (quoting 42 U.S.C. § 1983).

In the caption and list of parties included in his form Complaint, Claudio identifies Bierbaum, Hogan, Ojeda, Flores, and Ekwost as individual Defendants. (*See* Compl. at 1–2, 6.) But in the attached pages where he explains the factual basis and gives background for his conspiracy and discrimination causes of action, Claudio merely lumps these persons together in differently labeled groups. (*See* Compl. at 2, *cf.* Compl, at 6–7 (referring to "agents," "staff," "government actors," "PIA employees" and "prejudicial defendants.")). For example, Claudio alleges "all PIA employees" were aware of his gender identity, that "PIA senior staff" were overheard using offensive discriminatory epithets in February 2023 after he was promoted to one of four inmate clerk positions,

and that the "prejudicial defendants . . . schemed, conspired, [and] made plans to set [him] up and fire him." (*Id.* at 7.) While he points to Bierbaum as "facilitat[ing] the fictional search" of the community desk where stolen exams were found on March 2, 2023, nowhere does Claudio identify Bierbaum, Hogan, Ojeda, Flores or Ekwost as the members of the "PIA senior staff" other inmates overheard referring to him as the "faggot" they "wanted to get rid of." (*Id.* at 7, 8.) Nor does Claudio specify which of these persons, if any, comprised the group of "prejudicial defendants," PIA "agents," "staff," or "employees" he claims later met to hatch a plot and plant evidence against him. (*Id.* at 7.)

Claims asserted by pro se prisoners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (citation omitted). "[A] complaint which 'lumps together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirements of Rule 8(a)(2).'" *Adobe Sys. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (quoting *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996)).

Here, regardless of the constitutional or statutory bases asserted for either Claudio's purported conspiracy or Fourteenth Amendment discrimination causes of action, the Court finds he has failed to plead a plausible claim for relief against Defendants Bierbaum, Hogan, Ojeda, Flores, or Ekwost. This is because "each Government official . . . is only liable for his or her own misconduct," *Iqbal*, 556 U.S. at 677, and Claudio's Complaint fails to include sufficient factual content describing how each of these parties individually, by name, personally acted, or failed to act, to cause a violation of his rights. "[A] plaintiff c[an] not hold an officer liable because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones*, 297 F.3d at 935.

To properly state any claim for relief under section 1983, the plaintiff must plead facts showing how each of the named defendants "personal[ly] participat[ed] in the alleged rights deprivation." *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009).  In short, Claudio may not attribute liability to a group of defendants as he has, but instead must "set forth specific facts as to each individual defendant's" deprivation of his rights.  *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *see also Taylor*, 880 F.2d at 1045.

For all these reasons, the Court finds Claudio's entire Complaint fails to state a claim upon which relief can be granted and must be dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 4. Purported Cause(s) of Action

Finally, the Court notes Claudio cites the Fourteenth Amendment as the constitutional basis for his suit, but in his form Complaint refers to several attached pages which combine into "Cause of Action One" what appear to be distinct claims for relief alleging "discrimination against gender identity" and "conspiracy to discriminate against LGBTQ class member" pursuant to 42 U.S.C. §§ 1983 and 1985.  (*See* Compl. at 3, 6.)  Because his Complaint as currently pleaded fails to adequately allege any named Defendant may be held personally liable for violating any of his constitutional rights as a overriding preliminary matter, the Court need not also determine whether Claudio's conspiracy and discrimination claims, as currently conflated, would otherwise suffice to survive initial screening pursuant to 28 U.S.C. §§ 1915(e)(2) or 1915A.

Claudio is hereby cautioned, however, that if he wishes to assert more than one cause of action, say for example, discrimination based on his gender identity in violation of the Fourteenth Amendment's Equal Protection Clause, and another related claim alleging a conspiracy to violate his constitutional rights under either 42 U.S.C. § 1983 *or* 42 U.S.C. § 1985(3), he must set out those bases for relief and describe the involvement of each Defendant he seeks to hold liable separately in his Amended Complaint, as the pleading requirements for unlawful discrimination and conspiracy differ.

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (citations omitted).

"A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Lacey*, 693 F.3d at 935 (internal quotation omitted). To adequately allege a claim of conspiracy under section 1983, a plaintiff must include facts sufficient to show both "an underlying constitutional violation," *id.*, and "an agreement or meeting of the minds to violate constitutional rights." *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999) (internal quotation marks omitted); *see also Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (plaintiff must "show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement" (internal quotation marks omitted)).

Section 1985 also creates a civil action for damages caused by two or more persons who "conspire . . . for the purpose of depriving" the injured person of "the equal protection of the laws, or of equal privileges and immunities under the laws" and take or cause to be taken "any act in furtherance of the object of such conspiracy." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005) (quoting 42 U.S.C. § 1985(3)). "The language requiring intent to deprive of equal protection . . . means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Butler v. Elle*, 281 F.3d 1014, 1028 (9th Cir. 2002) (per curiam). However, "the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." *Thornton*, 425 F.3d at 1168 (citation omitted).

/ / /

### IV.  CONCLUSION

Accordingly, for all the reasons discussed, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Claudio's trust account the $65.60 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Claudio's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4. **DISMISSES** Claudio's Complaint in its entirety for failing to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and

5. **GRANTS** Claudio forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Claudio's Amended Complaint must be complete by itself without reference to his original Complaint. Any Defendant not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Claudio fails to file an Amended Complaint within 45 days, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira*

*v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: January 30, 2024

_____
Hon. John A. Houston
United States District Judge