UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CLAUDIO, CDCR #AU-1732,<br><br>Plaintiff,<br><br>vs.<br><br>PIA INDUSTRIES, INC.; MICHAEL BIERBAUM; PIA Shoe Factory Supervisor; CDCR; HOGAN; VICTOR OJEDA, PIA Shoe Factory Supervisor; FLORES; EKWOST; HILL, Warden; PALMER, Warden; DOES 1–50,<br><br>Defendants. | Case No.: 3:23-cv-01965-JAH-VET<br><br>**SCREENING ORDER RE AMENDED COMPLAINT**<br><br>**1) DISMISSING DEFENDANTS PIA INDUSTRIES, INC., CDCR, HOGAN, FLORES, EKWOST, HILL, PALMER AND DOES 1–50**<br><br>**AND**<br><br>**2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE UPON DEFENDANTS OJEDA AND BIERBAUM PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

**I.  BACKGROUND**

Before the Court is Plaintiff Robert Claudio's First Amended Complaint ("FAC"), which requires *sua sponte* screening because Claudio is a prisoner seeking relief from government officials and proceeding *in forma pauperis* ("IFP").  (*See* ECF No. 9.)  The Court finds Claudio's FAC alleges plausible Fourteenth Amendment and conspiracy

violations on the part of Defendants Bierbaum and Ojeda, but fails to state any viable claim for relief as to the other previously-named Defendants. Therefore, for the reasons explained more fully below, the Court **DISMISSES** Defendants PIA Industries, Inc., CDCR, Hogan, Flores, Ekwost, Hill, Palmer, and Does 1–50 as parties pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), **DIRECTS** the Clerk to issue a summons upon Defendants Bierbaum and Ojeda, and **ORDERS** the U.S. Marshal to effect service of process upon Bierbaum and Ojeda pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3).

## II.   SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) & 1915A(b)

### A.   Standard of Review

Because Claudio is a prisoner and is proceeding IFP, his[1] FAC, like his original

---

[1] Claudio identifies as an "LGBTQ person" in both the original Complaint and FAC, and refers to Defendants' failures to "adhere to or honor the dictates" of Cal. Penal Code § 2605. (*See* FAC at 3, 11.)

On September 26, 2020, California Governor Gavin Newsom signed into law, 'The Transgender Respect, Agency, and Dignity Act,' Cal. S.B. 132 (2020), *codified at* Cal. Penal Code §§ 2605, 2606 [hereinafter, "S.B. 132"]. Penal Code § 2605 requires CDCR officials to 'ask each individual entering into the custody of the department to specify all of the following:' (1) their gender identity of male, female, or nonbinary; (2) whether they identify as transgender, nonbinary, or intersex; and (3) their gender pronoun and honorific. Cal. Penal Code § 2605(a)(1)-(3)[.] CDCR may not discipline an inmate who refuses to answer or who fails to disclose complete information. *Id.* § (b). Section 2605 requires CDCR facility staff to 'promptly repeat the process of offering the individual an opportunity to specify the gender pronoun and honorific most appropriate for staff to use in reference to that individual[.]' *Id.* § (c). Finally, section 2605 prohibits '[s]taff, contractors, and volunteers of the department' from 'consistently fail[ing] to use the gender pronoun and honorific an individual has specified in all verbal and written communications with or regarding the individual that involve use of a pronoun and honorific.' *Id.* § (d).

Complaint, requires a preliminary screening which the Court conducts *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).  Under these statutes, the Court must dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").  Federal Rules of Civil Procedure 8(a) and 12(b)(6) together require complaints to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"At the pleading stage, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *In re Facebook, Inc.*

---

*Chandler v. California Dep't of Corr. & Rehabs.*, No. 1:21-CV-01657-JLT-HBK, 2024 WL 2153890, at *2 (E.D. Cal. May 14, 2024). However, neither Claudio's original Complaint nor his FAC identify any gender pronoun preferences. Therefore, the Court will continue to refer to Claudio as he/him unless and until an alternate preference is specified.

*Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As such, the plausibility standard is a "context-specific task that requires the reviewing court to [1] draw on its judicial experience and common sense." *Id.* at 679.

Finally, the court notes its "obligation where the petitioner is pro se, particularly in a civil rights case, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).

B.   Factual Allegations

Claudio alleges that during the months of February and March 2023, Defendants Ojeda and Bierbaum, both employed as supervisors in a Prison Industry Authority ("PIA") shoe manufacturing plant operating under contract with CDCR at Richard J. Donovan Correctional Facility, discriminated and conspired to falsely accuse him of theft in order to terminate his employment as an inmate clerk "because of [his] gender identity as an LGBTQ person."  (*See* FAC at 5–6.)  Specifically, Claudio claims to have worked at the shoe factory for two years before being promoted to a clerk position.  (*Id.* at 3, 5, 11.)  On several occasions before he was fired, Claudio alleges Ojeda required Claudio to complete Ojeda's duties, became angry when he failed to timely complete them, called Claudio as "his little homo," and referred to him using "other discriminatory epithets" in an "open and blatant" manner.  (*Id.* at 3, 11.)

During the third week of February 2023, Claudio alleges a fellow PIA shoe factory inmate employee named Michael Penix overheard a "negative conversation" between Supervisors Ojeda and Birnbaum.  (*Id.* at 6, 15.)  Penix claims Ojeda and Bierbaum "discuss[ed] their views and dislikes regarding [] Claudio, being a gay person working in the Clerk's Office and identifying as an LBGTQ individual."  (*Id.* at 15.)  Ojeda and Bierbaum "appeared uncomfortable with Robert Claudio's promotion," referred to Claudio as "that little fag," and said he "needs to go."  (*Id.* at 6, 15.)

"Shortly thereafter," on March 2, 2023, Claudio contends Bierbaum "discovered/found TPC Training Courses answer sheets" in a desk Claudio admits he used daily, but shared with other PIA inmate clerks. (*Id.* at 12.) Claudio claims Ojeda and Bierbaum conspired together to place the contraband PIA exams in the shared desk so that "erroneous misconduct charge[s]" could be filed against him.[2] Claudio claims he lost his job as a result of the charges, which were prompted by an agreement between Supervisors Ojeda and Bierbaum, who "dislike[d] and discriminat[ed]" against him because he "identi[fied] as an LGBTQ individual." (*Id.* at 12–13.)

Claudio asserts Ojeda and Bierbaum's conspiracy was the cause of his unlawful employment termination and deprived him of equal protection in violation of the Fourteenth Amendment.[3] (*Id.* at 3–6.) He seeks a "protective order from retaliation," and compensatory and punitive damages from each Defendant pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3). (*Id.* at 1, 8.)

---

[2] Claudio attaches to his FAC Rules Violation Report ("RVR"), Log No. 7280586, issued by Defendant Ojeda, and charging him with theft of state property valued in excess of $400, dated March 2, 2023. (*See* FAC, Ex. E at 21–24.) While found not guilty by Senior Hearing Officer A. Aguirre on April 4, 2023, *id.*, Ex. F at 26, Claudio nevertheless had already been removed from his work assignment as a result of Ojeda's request. (*Id.*, Ex. G at 29; Ex. H at 33.) Claudio filed two CDCR 602 Inmate Appeals, Log. No. 395689 and Log No. 428909, contesting both the issuance of the RVR and his job termination, and both appeals were granted. (*Id.*, Ex. H at 31, 33–34.) As a result, Claudio was placed back on the "Facility D PIA Shoe factory waitlist," *id.* at 34, but as of May 8, 2024, he has not "been reinstated to … employment as a Clerk in the Shoe Factory." (*See* FAC, Ex. A, at 13.)

[3] Claudio does not and could not allege any plausible procedural due process violation under the Fourteenth Amendment because he possesses no liberty or property interest in prison employment, or in any particular job. *See Walker v. Gomez,* 370 F.3d 969, 973 (9th Cir. 2004) ("[T]he Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty interest in prison employment[.]'") (citations omitted); *West v. Beauclair,* 338 F. App'x 716, 717 (9th Cir. 2009) (noting that a "[prisoner] d[oes] not have a liberty or property interest in the prison job that he lost, or prison jobs that he was precluded from obtaining, as a result of his [disciplinary] conviction.").

      C.    <u>Unnamed Parties</u>

First, the Court notes Claudio's FAC seeks to sue only Defendants Ojeda and Bierbaum in their individual capacities. (*See* FAC at 1–2.) Unlike his original pleading, Claudio no longer seeks relief against Defendants PIA Industries, Inc., CDCR, Hogan, Flores, Ekwost, Hill, Palmer, or Does 1–50. Therefore, the Court **DISMISSES** these Defendants as parties to this action based on Claudio's failure to state any claim for relief against them pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

      D.    <u>Defendants Ojeda and Bierbaum</u>

Second, the Court finds Claudio's FAC now contains "sufficient factual matter, accepted as true" to state plausible conspiracy and Fourteenth Amendment equal protection claims for relief pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) against Defendants Ojeda and Bierbaum. *Iqbal,* 556 U.S. at 678.

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). To state an equal protection claim, a plaintiff generally must "show that the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted); *Sampson v. Cnty of Los Angeles*, 974 F.3d 1012, 1022 (9th Cir. 2020); *see also Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998) ("We have held that § 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent."). The Ninth Circuit has found gender identity is at

least a "quasi-suspect class." *Karnoski v. Trump*, 926 F.3d 1180, 1200–01 (9th Cir. 2019); *see also Harrison v. Kernan,* 971 F.3d 1069, 1079–80 (9th Cir. 2020) (adopting intermediate scrutiny to gender-based equal protection claims arising in prison).

Even if the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1972); *SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564.

"A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Lacey*, 693 F.3d at 935 (internal quotation omitted). To adequately allege a conspiracy claim under section 1983, a plaintiff must include facts sufficient to show both "an underlying constitutional violation," *id.*, *and* "an agreement or meeting of the minds to violate constitutional rights." *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999) (internal quotation marks omitted); *see also Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (plaintiff must "show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement" (internal quotation marks omitted)). Because "[d]irect evidence of improper motive or an agreement . . . will only rarely be available[,] … it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." *Mendocino Envtl. Ctr.*, 192 F.3d at 1302. "[A]n agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants."

1  *Id.* at 1301.  Moreover, while "each participant in the conspiracy need not know the exact
2  details of the plan, […] each participant must at least share the common objective of the
3  conspiracy.'"  *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (quoting *United Steel*
4  *Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989)).
5     Section 1985 also creates a civil action for damages caused by two or more persons
6  who "conspire . . . for the purpose of depriving" the injured person of "the equal
7  protection of the laws, or of equal privileges and immunities under the laws" and take or
8  cause to be taken "any act in furtherance of the object of such conspiracy."  *Thornton v.*
9  *City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005) (quoting 42 U.S.C. § 1985(3)).
10 "The language requiring intent to deprive of equal protection . . . means that there must
11 be some racial, or perhaps otherwise class-based, invidiously discriminatory animus
12 behind the conspirators' action."  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see*
13 *also Butler v. Elle*, 281 F.3d 1014, 1028 (9th Cir. 2002) (per curiam).
14    The factual allegations Claudio asserts in his FAC involving both PIA Supervisors
15 Ojeda and Bierbaum meet these "threshold" pleading requirements, and thus survive the
16 Court's *sua sponte* review pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).  *See*
17 *Wilhelm*, 680 F.3d at 1123.  Therefore, the Court will order the U.S. Marshal to effect
18 service upon Defendants Ojeda and Bierbaum on Claudio's behalf.  *See* 28 U.S.C.
19 § 1915(d) ("The officers of the court shall issue and serve all process, and perform all
20 duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be
21 made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to
22 proceed in forma pauperis under 28 U.S.C. § 1915.").
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

### III. CONCLUSION

For the reasons discussed, the Court:

1) **DISMISSES** Defendants PIA Industries, Inc., CDCR, Hogan, Flores, Ekwost, Hill, Palmer, and Does 1–50 and **DIRECTS** the Clerk of the Court to terminate them as parties to this matter based on Plaintiff's failure to state a claim against them pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

2) **DIRECTS** the Clerk to issue a summons as to Plaintiff's Amended Complaint upon Defendants Victor Ojeda and Michael Bierbaum *only*, and forward it to him along with two blank U.S. Marshal Form 285s for Defendants Ojeda and Bierbaum. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, its January 30, 2024 Order Granting IFP (ECF No. 5), certified copies of his Amended Complaint (ECF No. 9), and the summons so that he may serve these two Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the Form 285s as completely and accurately as possible, include an address where Defendants Ojeda and Bierbaum may be found and/or subject to service, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

3) **ORDERS** the U.S. Marshal to serve a copy of the Amended Complaint and summons upon Defendants Ojeda and Bierbaum at the addresses provided by Plaintiff, and to file executed waivers of personal service upon both Defendants with the Clerk of Court as soon as possible after their return. If Defendants fail to return the requests for waiver within 90 days, the U.S. Marshal must instead file the completed Form USM 285 Process Receipt and Returns with the Clerk of Court, include the date the summons, Amended Complaint, and requests for waiver were mailed to each Defendant, and indicate why service remains unexecuted. All costs of service will be advanced by the United States; however, if any Defendant located within the United States fails without good cause to sign and return the waivers requested by the Marshal on Plaintiff's behalf, the Court will impose upon that Defendant any expenses later incurred in making personal service. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

4) **ORDERS** Defendants Ojeda and Bierbaum, once served, to reply to the claims found sufficient to survive screening in Plaintiff's Amended Complaint, *and any subsequent pleading Plaintiff may file in this matter in which they are named as parties*, within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its *sua sponte* screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face of the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond); and

5) **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include proof of service upon the Defendants, or their counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated: June 3, 2023

_____
Hon. John A. Houston
United States District Judge